IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 15-00704 HG-02 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TYLER D.K. PACARRO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER THE
FIRST STEP ACT (COMPASSIONATE RELEASE) (ECF No. 148)**

Defendant is currently incarcerated at the Federal Correctional Institution Oxford in Wisconsin with a projected release date of February 28, 2022.

Defendant has filed a Motion seeking immediate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Defendant seeks release due to the COVID-19 pandemic.

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

Defendant's MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE) (ECF No. 148) is **DENIED.**

**STANDARD OF REVIEW**

A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances.  Dillon v.

1

<u>United States</u>, 560 U.S. 817, 824-25 (2010).

On December 21, 2018, Congress passed the First Step Act of 2018. PL 115-391, December 21, 2018, 132 Stat. 5194. The First Step Act amended 18 U.S.C. § 3582(c), the statute governing the limited circumstances under which the trial court may evaluate a motion for reduction of sentence.

The First Step Act altered the statute in Section 3582(c)(1)(A) to allow a defendant to request the trial court reduce his sentence through a motion for compassionate release, but the statute requires the defendant to first present his request for release to the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment...after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (I)   extraordinary and compelling reasons warrant such a reduction;
>
> ...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

## SECTION 3582(c)(1)(A) AS AMENDED BY THE FIRST STEP ACT

### A.   Mandatory Procedural Requirement

The statute allows the Court to consider a defendant's request for compassionate release only after the defendant has first presented the request to the Bureau of Prisons ("BOP").   18 U.S.C. § 3582(c)(1)(A); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

The Government argues that this Court lacks subject-matter jurisdiction to consider Defendant's Motion because it claims the Defendant did not specifically raise all of his medical concerns in his June 26, 2020 letter to the warden requesting compassionate release.  (Gov't Opp. at p. 8, ECF No. 156).

The Government concedes, however, that more than 30 days have passed since the Defendant sent his letter to the warden on June 26, 2020.

Numerous courts have rejected the Government's argument that the procedural requirement in 3582(c)(1)(A) is jurisdictional. United States v. Alam, 960 F.3d 831, 833 (6th Cir. 2020) (the Sixth Circuit Court of Appeals held that a prisoner's failure to comply with Section 3582(c)(1)(A)'s filing prerequisites does not deprive the court of subject-matter jurisdiction over the motion); United States v. Connell,   F.Supp.3d  , 2020 WL 2315858, *3 (N.D. Cal. May 8, 2020) (finding Section 3582(c)(1)(A)'s exhaustion provision is not jurisdictional).

This Court agrees and finds that the procedural requirement

3

in Section 3582(c)(1)(A) is not jurisdictional, but it is a
mandatory filing prerequisite.  United States v. Arciero, Crim.
No. 13-001036SOM, 2020 WL 3037073, *5 (D. Haw. June 5, 2020)
(explaining that Section 3582(c)(1)(A) is a mandatory claim-
processing rule, not a jurisdictional rule); see Fort Bend Cty.,
Texas v. Davis, 139 S.Ct. 1843, 1852 (2019) (finding requirement
for exhaustion of administrative remedies before the agency is
"mandatory" and nonjurisdictional).

The Government's argument that complete issue exhaustion is
required conflicts with the statute's text.  The statute
specifically allows a defendant to seek compassionate release
following a 30-day lapse in receipt from the warden and does not
require the prisoner to fully exhaust all administrative remedies
before seeking relief in Court.  18 U.S.C. § 3582(c)(1)(A).
Complete issue exhaustion as to the Defendant's specific medical
conditions is not required, particularly given the ever-changing
data and medical information available relating to the COVID-19
pandemic.  United States v. Torres, 464 F.Supp.3d 651, 655,
(S.D.N.Y. 2020).

More than thirty days have lapsed since the Defendant
submitted his request for compassionate release based on his
medical conditions to the warden.  The 30-day lapse allows the
Court to consider Defendant's Motion pursuant to 18 U.S.C. §
3582(c)(1)(A).  The Court is able to consider the legal basis
upon which Defendant sought compassionate relief before the

warden, and the Defendant may present his medical information as it is currently available.

**B.     Merits Of Defendant's Request For Compassionate Release**

If a defendant has complied with the mandatory procedural requirement set forth in 18 U.S.C. § 3582(c)(1)(A), the District Court may reduce a term of imprisonment, including the grant of compassionate release, upon finding "extraordinary and compelling reasons" consistent with applicable policy statements of the Sentencing Commission.

The Sentencing Commission's policy statement is provided in United States Sentencing Guidelines § 1B1.13:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A)     Extraordinary and compelling reasons warrant the reduction; or
>
> (B)     The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2)     The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3)     The reduction is consistent with this policy statement.

5

U.S.S.G. § 1B1.13.

If Defendant is not 70 years of age and was not sentenced pursuant to 18 U.S.C. § 3559(c), Defendant is only entitled to relief if he demonstrates:

(1)   extraordinary and compelling reasons warrant a sentence reduction;

(2)   he is not a danger to the safety of others or the community; and,

(3)   any requested reduction is consistent with the policy statement.

United States v. Gill, 2020 WL 2084810, *2 (E.D. Cal. Apr. 30, 2020).

## C.    Extraordinary And Compelling Reasons

The Sentencing Commission's Commentary Application Notes for Guideline § 1B1.13 provides the definition of "extraordinary and compelling reasons."  The Court agrees with the district courts in the Ninth Circuit that have concluded that Section 1B1.13 and its definition of "extraordinary and compelling reasons" applies to motions for compassionate release even though the sentencing guideline was not separately amended following the passage of the First Step Act.  See Riley v. United States, 2020 WL 1819838, *8 (W.D. Wash. Apr. 10, 2020) (collecting cases); United States v. Shields, 2019 WL 2359231, *4 (N.D. Cal. June 4, 2019).

Sentencing Guideline Section 1B1.13's Commentary Application Notes explain that extraordinary and compelling reasons exist when:

(A)  **Medical Condition of the Defendant.**-

    (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

        (I)       suffering from a serious physical or medical condition,

        (II)      suffering from a serious functional or cognitive impairment, or

        (III)     experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)  **Age of the Defendant.**-The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)  **Family Circumstances.**-
    (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)  **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Court has the discretion to determine whether other extraordinary and compelling reasons exist, as stated in paragraph (D), when ruling on motions for compassionate release. United States v. Brooker, 976 F.3d 228, 234-35 (2d Cir. 2020); United States v. Hernandez, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020).

## **PROCEDURAL HISTORY**

On September 9, 2015, the grand jury returned an Indictment charging Defendant for his role in a conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)((1), & 841(b)(1)(A).  (Indictment, ECF No. 1).

On February 19, 2016, Defendant pled guilty, pursuant to a plea agreement, to the one count in the Indictment.  (ECF Nos. 65-76).

Defendant's Presentence Investigation Report (ECF No. 134) reflected that at the time of sentencing Defendant was 25 years old, and he was in Criminal History Category III with a Total Offense Level of 26 and a statutory mandatory minimum sentence of 120 months imprisonment.  (Id. at pp. 2, 38).

The Court imposed the mandatory minimum sentence of 120 months imprisonment, followed by 5 years of supervised release. (Judgment, ECF No. 146).

On August 18, 2020, Defendant, proceeding pro se, filed a

8

Motion for Emergency Compassionate Release.  (ECF No. 148).

On August 25, 2020, the Court appointed counsel for Defendant to assist him in supplementing his Motion.  (ECF No. 150).

On September 4, 2020, Defendant, with the assistance of counsel, filed a Supplemental Memorandum in Support of his Motion.  (ECF No. 152).

On September 17, 2020, the Government filed its Opposition. (ECF No. 156).

On September 28, 2020, Defendant filed his Reply.  (ECF No. 157).

On October 20, 2020, Defendant filed an UPDATE TO THE COURT REGARDING MR. PACARRO'S MOTION FOR MODIFICATION OF SENTENCE IN ACCORDANCE WITH TITLE 18 U.S.C. § 3582(c)(1)(A)(i).  (ECF No. 161).

On October 26, 2020, the Court issued an additional briefing schedule.  (ECF No.  165).

On November 23, 2020, Defendant filed a NOTICE OF SUPPLEMENTAL AUTHORITY.  (ECF No.  166).

On the same date, Defendant filed a SECOND UPDATE TO THE COURT REGRADING MR. PACARRO'S MOTION FOR MODIFICATION OF SENTENCE IN ACCORDANCE WITH TITLE 18 U.S.C. § 3582(c)(1)(A)(i).  (ECF No. 167).

On December 3, 2020, Defendant filed a SECOND NOTICE OF SUPPLEMENTAL AUTHORITY.  (ECF No. 170).

The Court elects to decide the matter without a hearing
pursuant to District of Hawaii Local Rule 7.1(c).

## ANALYSIS

Defendant Pacarro is 28 years old.  Defendant is
incarcerated at the Federal Correctional Institution Oxford in
Wisconsin.  Defendant bears the burden to demonstrate that
extraordinary and compelling reasons exist that warrant immediate
release from incarceration.  United States v. Greenhut, 2020 WL
509385, *1 (C.D. Cal. Jan. 31, 2020).

A defendant's general concerns about potential exposure to
COVID-19 while incarcerated do not meet the criteria for
extraordinary and compelling reasons for a reduction in sentence.
United States v. Eberhart, 448 F.Supp.3d 1086, 1089-90 (N.D. Cal.
Mar. 25, 2020); United States v. Carver,   F.Supp.3d   , 2020
WL 1892340, *3 (E.D. Wash. Apr. 8, 2020).

The Centers for Disease Control has identified certain
categories of individuals that are at a higher risk for severe
illness due to COVID-19.  The list includes people with
conditions such as: chronic lung disease, moderate or serious
asthma, serious heart conditions, obesity, chronic kidney
disease, liver disease, diabetes, or individuals who are
immunocompromised.  See United States v. Jones, Crim. No. 13-
00860 LEK-03, 2020 WL 2331678, *5 (D. Haw. May 11, 2020).

10

I.   **Medical Condition**

   A.   **Current Centers For Disease Control Standards And Defendant's Medical Concerns**

   Defendant alleges that he has obesity.  Defendant also states that he has gout.

   The Centers for Disease Control ("CDC") has explained that, as of December 14, 2020, people with certain underlying medical conditions are at increased risk for severe illness from COVID-19, which include obesity.  (CDC Coronavirus Disease 2019 (COVID-19) Website, available at  http://www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-with-medical-conditions.h tml?CDC AA refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019- ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, last visited 12/14/20).

   B.   **Defendant Has Contracted And Recovered From COVID-19**

   On October 13, 2020, Defendant tested positive for COVID-19, and he was "Asymptomatic."  (Def.'s Supplemental BOP Medical Records at p. 15, attached as Ex. E to Def.'s Supp., ECF No. 164).  Defendant was quarantined and monitored for symptoms. (Def.'s Second Supplemental BOP Medical Records at p. 6, attached as Ex. F to Def.'s Second Supp., ECF No. 167-2).  Defendant did not experience negative COVID-19 symptoms and did not present cough, fever, fatigue, or loss of sense of taste or smell.  (Id.) Defendant had even and unlabored respirations, spoke clearly,

moved with ease, and was not in distress.  (<u>Id.</u>)

Defendant was deemed fully recovered from COVID-19 on October 27, 2020. (<u>Id.</u> at p. 12).

Little is understood about the possibility of COVID-19 re-infection, however, the fact that Defendant has already contracted COVID-19 and recovered counsels against a finding of extraordinary and compelling circumstances to warrant granting immediate release.  <u>United States v. Ofa</u>, Crim. No. 17-00145 JMS-01, 2020 WL 4496497, *2-*3 (D. Haw. Aug. 4, 2020).  Numerous courts have concluded that the dangers associated with COVID-19 are not a ground for relief for someone who already had the disease and recovered.  <u>United States v. Molley</u>, Crim. No. 15-0254 JCC, 2020 WL 3498482, *2 (W.D. Wash. June 29, 2020); <u>United States v. Zubkov</u>, 460 F.3d 450, 454 (S.D.N.Y. 2020).

### C.    **Medical Conclusion**

Defendant is 28 years old.  The CDC recognizes that the risk of developing severe illness from COVID-19 increases with age. Those 65 years of age or older are at increased risk and those 85 years and older at the greatest risk.  (https://www.cdc.gov/coronavirus2019-ncov/need-extra-precautions/older-adults.html, last visited 12/14/20).

Defendant is 28 years old and his age does not place him in a category that would constitute an extraordinary and compelling reason for compassionate release.

Defendant has a history of obesity.  (Presentence Report at ¶ 96, ECF No. 134).  As of February 4, 2020, Defendant was 5'6" and weighed 232 pounds.  (Def.'s BOP Medical Records, attached as Ex. B to Def.'s Motion at p. 3, ECF No. 155).  Defendant's Body Mass Index was 37.4.  (Id. at p. 5).  On October 13, 2020, Defendant's Body Mass Index was 38.1.  (Def.'s Second Supp. BOP Medical Records at p. 2, attached as Ex. F to Def.'s Second Supp., ECF No. 167-2).  The Court is concerned by Defendant's Body Mass Index, but this factor alone is insufficient to support a finding of "extraordinary and compelling reasons" for immediate release.

Defendant's medical records reflect that his obesity and gout conditions have been addressed while he has been incarcerated.  Defendant has been prescribed various medications to treat his gout, he has been counseled on diet, exercise, and weight loss programs, and he continues to have access to medical care.  (BOP Medical Records at pp. 5, 9, 12, 24, ECF No. 155).  Defendant contracted COVID-19 but was asymptomatic.  At this point in time, the records reflect his recovery from COVID-19 on October 27, 2020.

Conditions that can be managed in prison are not a basis for compassionate release.  United States v. Kazanowski, Crim. No. 15-00459 DKW-05, 2020 WL 3578310, *9 (D. Haw. July 1, 2020) (citing U.S.S.G. § 1B1.13 cmt. n.1(A)).

## II.   Section 3553(a) Factors And Defendant's History and Characteristics

### A.   History and Characteristics

In order to be eligible for compassionate release, Defendant must establish that release is appropriate pursuant to the factors set forth in 18 U.S.C. § 3553(a) and that he is not a danger to the safety of others or the community.  18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2).

The Section 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed.

Defendant Pacarro is currently serving a term of imprisonment for his role in a six-person conspiracy to distribute large quantities of high purity methamphetamine in the community.  Defendant acted as a courier and transported more than 2 pounds of methamphetamine from San Diego to Hawaii. (Presentence Report at ¶ 52, ECF No. 134).  Defendant also smuggled half of an AR-15 assault rifle to Hawaii.  (Id. at ¶¶ 28, 41).  Defendant was held responsible for 521.7 grams of "ice" and 907.2 grams of generic methamphetamine.  (Id. at ¶¶ 55- 56).

Defendant was 25 years old at the time of his sentencing and was in Criminal History Category III with a serious criminal history.

The Presentence Report reflects that Defendant has a history of robbery, weapons possession, and violence.  On December 12,

2011, Defendant was arrested for Assault after punching his brother in the head.  (Presentence Report at ¶ 77, ECF No. 134). Defendant was given a citation and ordered to stay away from the family residence for 24 hours.  (Id.)  Defendant did not comply with the order and he returned to the residence the following day on December 13, 2011.  (Id. at ¶ 68).  Defendant's mother called police, stating that the Defendant came to the residence, yelled profanities, and threw items around her house in violation of a 24-hour warning issued by police officers.  (Id.)

The following day, on December 14, 2011, Defendant's mother received a Temporary Restraining Order against the Defendant. (Id. at ¶ 94).

On July 26, 2012, Defendant was convicted of Abuse of Family/Household Member in Family Court as a result of the December 12 and 13, 2011 incidents.  (Id. at ¶ 68).  Defendant was ordered to attend anger management classes as a condition of probation, but he failed to do so.  (Id.)  Defendant's probation was revoked on three separate occasions.  (Id.)

On October 22, 2013, Defendant was convicted of Promoting Detrimental Drugs in the Third Degree.  (Id. at ¶ 70).

Four days later, on October 26, 2013, Defendant was arrested again.  (Id. at ¶ 72).  Officers observed Defendant drive a moped and perform a "wheelie" across an intersection in Waikiki, narrowly avoiding a collision with another vehicle.  (Id.) Defendant was stopped and admitted that he did not have a driver's license and that the moped was stolen.  (Id.)  Defendant

15

was convicted of Unauthorized Control of a Propelled Vehicle.
(Id.)  Defendant also had two prior convictions for Driving
Without a License.  (Id. at ¶¶ 69, 71).

One month later, on November 25, 2013, Defendant was
arrested for Robbery in the First Degree.  According to Honolulu
Police Reports, the alleged victim reported that he was stopped
at a traffic light while driving a moped in Honolulu, when a male
exited the passenger side of a vehicle and struck the victim with
a baseball bat and demanded the moped.  (Id. at ¶ 76).  The
victim got off his moped and the suspect drove away on it, while
the driver followed him.  (Id.)  The victim was shown a
photographic lineup and identified the Defendant and another
individual as the assailants.  (Id.)

Defendant was in Hawaii State custody awaiting trial for
Robbery in the First Degree when the grand jury returned the
Indictment charging him for his role in the drug conspiracy in
the instant case.  A Writ of Habeas Corpus Ad Prosequendum was
issued and Defendant was transferred from state custody to
federal custody.  (Id. at ¶ 3).

For the instant offense, Defendant was subject to a
statutory mandatory minimum sentence of 120 months imprisonment,
and he was in Criminal History Category III.

Defendant was sentenced to the statutory mandatory minimum
of 120 months imprisonment.

Following sentencing, in September 2017, Defendant pled
guilty to lesser charges relating to the November 2013 incident

16

where the victim was hit with a baseball bat and Defendant and
another individual stole his moped.  Defendant pled guilty to
Unauthorized Control of a Propelled Vehicle and Theft in the
Second Degree in Hawaii State Court for which he received two
concurrent terms of imprisonment of five years.  (Exhibit 1,
attached to Gov't Opp., ECF No. 156-1; Exhibit 2, attached to
Gov't Opp., ECF No. 156-2).

Defendant has numerous other arrests, including another
arrest for Robbery in the First Degree in 2012, where officers
seized a 16-inch retractable metal baton from the Defendant.
(Presentence Report at ¶ 76, ECF No. 134).  In 2014, Defendant
was arrested for Carrying or Possessing a Loaded Firearm on a
Public Highway.  (Id. at ¶ 85).  Officers seized a Smith and
Wesson .38 handgun and five .38 caliber cartridges loaded with
full metal jacket bullets during the arrest.  (Id.)

At the time of Defendant's August 30, 2017 sentencing,
neither of the September 2017 convictions was used to calculate
Defendant's sentencing guidelines.

**B.   First Step Act's Change To Safety Valve Eligibility**

Following Defendant's sentencing, in 2018, the First Step
Act expanded safety valve eligibility for certain defendants.
First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, §
402(a).

The First Step altered the eligibility for the safety valve
and now allows a defendant to be eligible if he does not have:

> (A)  more than 4 criminal history points, excluding any
>      criminal history points resulting from a 1-point
>      offense, as determined under the sentencing guidelines;
>
> (B)  a prior 3-point offense, as determined under the
>      sentencing guidelines; and,
>
> (C)  a prior 2-point violent offense, as determined under
>      these sentencing guidelines.

First Step Act § 402.

Defendant argues that the Court should lower his sentence based on the change to the safety valve eligibility calculations set forth in the First Step Act.

Congress, however, did not make the provision retroactive. United States v. Manzo, 793 Fed. Appx. 620 (9th Cir. Feb. 11, 2020). A defendant is not entitled to resentencing pursuant to the First Step Act's change in safety valve calculations. See United States v. Sanchez, 795 Fed. Appx. 704, 707 (11th Cir. Nov. 15, 2019). The First Step Act specifically provides that such amendments are only to apply if the sentence has not been imposed as of the date of the Act's enactment. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 402(b). Defendant was sentenced before the Act's enactment and the change in law for safety valve calculations does not apply retroactively in a motion for compassionate release. See United States v. Flores, 2020 WL 5630263, *1-*2 (N.D. Cal. Sept. 21, 2020).

As the Government correctly points out in its Opposition, Defendant has not established that the safety valve would apply to him even if he was eligible for resentencing.

First, there is a question if Defendant's July 26, 2012

18

conviction for Abuse of Family/Household Member in Family Court
Case No. FC11-1-2383, for which he received 2-points, constitutes
a "violent offense" for purposes of safety valve calculations.

Second, on September 14, 2017, Defendant was convicted of
Unauthorized Control of Propelled Vehicle in Hawaii State Court
for which he received a term of imprisonment of five years.
(Exhibit 2, attached to Gov't Opp., ECF No. 156-2).

Third, on September 25, 2017, Defendant was convicted of
Theft in the Second Degree in Hawaii State Court for which he
received a term of imprisonment of five years.  (Exhibit 1,
attached to Gov't Opp., ECF No. 156-1).

Neither the September 14, 2017 conviction nor the September
25, 2017 conviction was calculated as part of Defendant's
sentencing guidelines in this case because the convictions were
entered after the August 30, 2017 sentencing hearing.

Defendant's arguments based on the First Step Act's
expansion of safety valve eligibility are wholly inapplicable
here.  Defendant is not eligible for resentencing based on the
change in law.  Even if Defendant was eligible for resentencing,
the change in law does not apply to Defendant.  In fact, if
resentenced, Defendant would likely be in Criminal History
Category V, rather than Criminal History Category III.  Defendant
would not be safety valve eligible due to the two September 2017
convictions in Hawaii State Court that were entered following his
August 2017 sentencing in this case.  (Gov't Opp. at p. 12, ECF
No. 156).

19

### C.    Portion Of Sentence Served

A review of the caselaw demonstrates that the portion of the
sentence already served by the defendant is a necessary factor
for the Court to consider in evaluating compassionate release.
United States v. Connell,     F.Supp.3d.    , 2020 WL 2315858, at
*6 (N.D. Cal. May 8, 2020).  The amount of time served of the
originally imposed sentence must be considered pursuant to
Section 3553(a) to ensure that the amount of time adequately
reflects the seriousness of the offense, deters criminal conduct,
and protects the public.  United States v. Barber, 466 F.Supp.3d
1127, 1133 n.9 (D. Ore. May 12, 2020).

Defendant received a 120-month sentence.  His projected
release date is February 28, 2022.

### D.    Appropriateness of Immediate Release

The Court finds that the nature and circumstances of
Defendant's offense weigh in favor of his 120-month mandatory
minimum sentence.  Defendant is currently serving a sentence for
being a member of a conspiracy to distribute large quantities of
highly pure methamphetamine in the community.

Defendant's history and characteristics also do not favor a
reduced sentence.  At age 25, Defendant was in Criminal History
Category III with convictions for Abuse of a Household/Family
Member and Promoting Detrimental Drugs.

Defendant was in state custody for a Robbery offense that

involved violence when he was indicted for the crime for which he is currently serving his sentence.  Defendant subsequently pled guilty to lesser charges of Theft and Unauthorized Use of a Propelled Vehicle for which he received sentences of five years imprisonment, which were not calculated as part of Defendant's criminal history score.

Defendant has a poor record on supervision as he violated the terms of his probation in Hawaii State Court on numerous occasions and failed to complete his anger management course.

Defendant also has a history of possessing weapons. Defendant transported parts of an assault weapon while involved in the instant conspiracy to distribute methamphetamine.  During prior arrests, Honolulu Police Officer seized a metal baton, a handgun, and ammunition from the Defendant's possession.

## III. Summary Of Medical Conclusion And Section 3553(a) Factors

Defendant has not established a basis for compassionate release because of his obesity and gout.  The record does not demonstrate that he is suffering from a terminal health condition or a condition that substantially interferes with his ability to provide self-care while incarcerated.  Defendant has already contracted COVID-19 and fully recovered.  Defendant has been able to manage his medical conditions while incarcerated.  The record demonstrates that Defendant has received and continues to receive appropriate medical care while incarcerated.

Defendant is serving a sentence for a felony drug

trafficking conviction that involved him transporting more than 2 pounds of methamphetamine to Hawaii.  Defendant's serious criminal record, convictions following his sentencing in this case, history of violence and use of weapons, and his poor record of behavior on probation in Hawaii state court demonstrate that he poses a danger to the safety of others and the community.

Defendant's immediate release would not adequately reflect the seriousness of the offense, would not properly deter similar criminal conduct, and would not protect the public.  The factors in Section 3553(a) do not support the immediate release of the Defendant.

**CONCLUSION**

Defendant's Motion To Reduce Sentence Under The First Step Act (COMPASSIONATE RELEASE) (ECF No. 148) is **DENIED.**

IT IS SO ORDERED.

Dated: December 14, 2020, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

<u>United States v. Tyler D.K. Pacarro</u>, Crim. No. 15-00704 HG-02;
**ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (ECF No. 148)**